**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| RYAN P. LOWERY, | : | Case No. 3:10-cv-427 |
| Plaintiff, | : | District Judge Walter H. Rice |
| | | Magistrate Judge Michael J. Newman |
| vs. | : | |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER OF | | |
| SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY
FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND
REVERSED; AND (2) THE CASE BE REMANDED FOR AN AWARD OF IMMEDIATE
DISABILITY INSURANCE BENEFITS WITH AN ONSET DATE OF
MAY 15, 2000**

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. § 405(g).

At issue is whether the Administrative Law Judge ("ALJ") erred in finding that Plaintiff Ryan P.

Lowery ("Plaintiff") was "not disabled" and therefore unentitled to Disability Insurance Benefits

("DIB"). *See* Doc. 5 at PAGEID 63.

The case is before the Court upon Plaintiff's Statement of Errors (doc. 9), the

Commissioner's Memorandum in Opposition (doc. 13), Plaintiff's Reply (doc. 14), the

administrative record (doc. 5), and the record as a whole.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendation.

# I. BACKGROUND

## A.    Procedural History

Plaintiff filed his DIB application on August 8, 2006 asserting that he has been under a "disability" since May 15, 2000.  PAGEID 134.  Plaintiff claims he is disabled due to a back injury and cognitive brain injury.  PAGEID 154.  His DIB insured status expired on December 31, 2006, and therefore he has the burden to prove he was disabled prior to that date.  *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Following initial administrative denials of Plaintiff's application, Plaintiff received a hearing before ALJ Thomas R. McNichols, II.  PAGEID 65.  At the hearing, the ALJ heard testimony from Plaintiff and William J. Braunig, a vocational expert.  PAGEID 67-95.   On July 22, 2009, the ALJ issued a written decision, concluding that Plaintiff was not under a disability at any time from May 15, 2000, the alleged disability onset date, to December 31, 2006, the date of last insured, and therefore, was not eligible to receive DIB.   PAGEID 52-63.

Specifically, the ALJ's "Findings," which represent the rationale of his decision, were as follows:

1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2006.

2.    The claimant did not engage in substantial gainful activity during the period from his alleged onset date of May 15, 2000, through his date last insured of December 31, 2006 (20 CFR 404.1571 et seq.).

3.    Through the date last insured, the claimant had the following severe impairments:   chronic low back pain and nonspecific memory and concentration deficits (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5.     After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b).[2] However, the claimant was restricted to no more than frequent kneeling and to only occasional stooping, crouching, and crawling. He was also precluded from repetitively bending or twisting at the waist and from climbing ladders, ropes, and scaffolds or from otherwise working around hazards. The claimant was also restricted to performing simple one- and two-step job tasks (requiring little, if any, concentration), to no requirement to maintain concentration on a single task for more than 15 minutes at a time, to no more than limited contact with coworkers and supervisors (i.e. no teamwork) and to no direct interpersonal contact with members of the general public.

6.     Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.     The claimant was born on March 1, 1978, and was 28 years old, which is defined as a "younger individual age 18-49," on the date last insured. (20 CFR 404.1563).

8.     The claimant has a marginal education and is able to communicate in English (20 CFR 404.1564).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not he has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

---

[2]The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 404.1567. Sedentary work "involves lifting no more than 10 pounds at a time" and "a certain amount of walking and standing is often necessary." *Id.*§ 404.1567(a). Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*§ 404.1567(b). Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds." *Id.*§ 404.1567(c). Heavy work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Id.*§ 404.1567(d). Very heavy work "involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying objects weighing up to 50 pounds." *Id.*§ 404.1567(e).

10.     Through the dated last insured, considering his age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11.     The claimant was not under a disability, as defined in the Social Security Act, at any time from May 15, 2000, the alleged onset date, through December 31, 2006, the date last insured (20 CFR 404.1520(g)).

PAGEID 55-62.  In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore unentitled to DIB.

Thereafter, the Appeals Council denied Plaintiff's request for review, PAGEID 42-44, making the ALJ's non-disability finding the final administrative decision of the Commissioner. Plaintiff filed this appeal, arguing that the ALJ erred in:  (1) rejecting his treating physician's opinion; and (2) failing to consider that the Veterans Administration ("V.A.") awarded Plaintiff disability benefits.  *See* doc. 9.

### B.     Plaintiff's Vocational Profile and Testimony

While on active duty in the United States Marine Corps, Plaintiff was seriously injured in a motor vehicle accident. PAGEID 1455. On May 15, 2000,[3] Plaintiff was a passenger in a five-ton service vehicle that flipped over, pinning him under the vehicle. *Id.*  Plaintiff lost consciousness and is unable to recall the accident or early post-traumatic treatment.  *Id.*  He was initially treated in a field hospital in Kenya, but was later medically evacuated to the National Naval Medical Center in Bethesda, Maryland, where he was hospitalized for forty-three days.  PAGED 1455-56.

---

[3]The exact date of the motor vehicle accident is not clear from the record.  Some records state that it occurred on May 15, 2000 and others state on May 16, 2000.  Plaintiff asserts that the onset date is May 15, 2000, and the Commissioner has not refuted this date.  Therefore, the Court will assume the accident occurred on May 15, 2000.

Plaintiff sustained multiple injuries, including a collapsed lung, a severe laceration to his buttocks, a multi-level thoracolumbar compression fracture, and a closed head injury. PAGEID 1450, 1455. Further, Plaintiff was diagnosed with an increasing kyphoscoliotic deformity.[4] PAGEID 1451. Therefore, on June 16, 2000, Plaintiff underwent surgery to fuse his compressed spinal fractures -- from T5 to L3 levels -- with Harrington rods and pedicle screws. *See* PAGEID 1455-56. Although Plaintiff's surgery initially appeared to be successful, PAGEID 1457, Plaintiff continued to experience constant back pain that radiated into his legs. PAGEID 79-80.

Plaintiff was twenty-eight years old on his date last insured and thus is considered a "younger individual." *See* 20 C.F.R. § 404.1563. Plaintiff completed the eleventh grade, but never obtained a GED. PAGEID 71, 159. He served in the United States Marine Corps from January 1999 to December 2001, where he worked as a motor vehicle operator. PAGEID 72. In addition to his military career, Plaintiff has past relevant work as a cook, fast food worker, and a stock clerk at a department store. PAGEID 155, 161. Plaintiff was last employed in February 2001, working part-time filing papers, and he has not attempted to work since then. PAGEID 71-72.

At the administrative hearing, Plaintiff testified that he has continuous low back pain that radiates into both legs, rating his pain as a six on a ten-point scale. PAGEID 73, 79-80. He has had two back surgeries -- the second in June 2005. PAGEID 74, 76. To manage his back pain, Plaintiff testified, he uses a TENS (transcutaneous electrical nerve stimulation) unit and takes pain medication. PAGEID 75, 80-81. Plaintiff testified that although he is most comfortable lying down, his pain still interferes with his sleep. PAGEID 81.

---

[4]Kyphoscoliosis is a deformity of the spine, characterized by a backward and lateral curvature.

Plaintiff reported that extra activity increases his back pain. PAGEID 88. As for his daily activities, Plaintiff reported that he cooks sometimes, does household chores a couple of days a week, grocery shops with his wife, visits with friends occasionally, and goes to the movies occasionally. PAGEID 83-84. Plaintiff further reported that since he has stopped working, he has taken one trip to Florida in 2008. PAGEID 84-85. Plaintiff estimated that he drives only three days per week, explaining that driving is difficult for him due to his decreased mobility. PAGEID 70-71. When Plaintiff does leave his house, he testified, it is only for short periods of time and he has to wear a back brace and take his pain medication. PAGEID 88.

In addition to the back pain, Plaintiff suffers from a cognitive brain injury as a result of the motor vehicle accident. PAGEID 77. Consequently, Plaintiff testified that he has difficulty dealing with stress, concentrating, and retaining information. PAGEID 76-77. Specifically, he reported that his attempt to take classes at a community college in 2004 failed because he couldn't remember what he learned in the first quarter to apply in the second quarter. PAGEID 83. He further reported that he suffers from depression, but does not take any medication or go to counseling. PAGEID 77-78.

## II. APPLICABLE LAW

### A.     Substantial Evidence Standard

A court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, a court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found the plaintiff disabled. *Id.*

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Thus, "[e]ven if supported by substantial evidence . . . a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen,* 478 F.3d at 746.

**B.     "Disability" Defined**

To be eligible for DIB, a claimant must be under a "disability" as defined by the Social Security Act.  42 U.S.C. §§ 423 (a), (d).  Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  42 U.S.C. § 423(d).  A DIB claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition.  *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520.  Although a dispositive finding at any step ends the ALJ's

review, *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1.  Has the claimant engaged in substantial gainful activity?

2.  Does the claimant suffer from one or more severe impairments?

3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4.  Considering the claimant's residual functional capacity ("RFC"), can he or she perform his or her past relevant work?

5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can he or she perform other work available in the national economy?

20 C.F.R. § 404.1520(a)(4).

## III. ANALYSIS

As a preliminary note, the pertinent medical findings and opinions have been adequately summarized in the parties' briefs, *see* doc. 9 at PAGEID 1690-1702; doc. 9-1; doc. 13 at PAGEID 1737-44, and the Court will not repeat them here. Where applicable, the Court will identify the medical evidence relevant to its decision.

Plaintiff argues that the ALJ erred in two respects. First, he contends the ALJ ignored the opinion of his treating physician, Dr. Rivera, along with the V.A. medical records supporting Dr. Rivera. *See* doc. 9 at PAGEID 1703. Second, he asserts the ALJ ignored the V.A.'s determination that he was entitled to full benefits due to his service-connected injury. *See id.* at PAGEID 1707.

### A.      The ALJ Erred in Rejecting Plaintiff's Treating Physician's Opinion

Plaintiff first contends that the ALJ erroneously discredited Dr. Rivera's opinion that Plaintiff was disabled. Plaintiff asserts that, contrary to the ALJ's findings, Dr. Rivera's opinion was

consistent with the record as a whole. Doc. 9 at PAGEID 1703. Further, Plaintiff argues that the ALJ improperly gave greater weight to opinions by non-examining physicians and psychologists -- who concluded that he was not disabled. Therefore, Plaintiff argues, the ALJ violated the treating physician rule. *Id.* For the reasons that follow, the Court agrees that the ALJ violated the treating physician rule and that his decision, therefore, should be reversed.

### 1.    Treating Physician Rule

The treating physician rule "requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because:

> 'these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.'"

*Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). Thus, an ALJ must give controlling weight to a treating source if he or she finds the opinion well-supported by medically acceptable data and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406 (citing 20 C.F.R. § 404.1527(d)(2)). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator

gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 406-07 (citing SSR 96-2p, 1996 SSR LEXIS 9, at *12).

### 2. Dr. Rivera's Medical Opinion

At the time of the ALJ's decision, Dr. Rivera had been Plaintiff's primary care physician for almost three years. *See* PAGEID 1623. During that time, Dr. Rivera repeatedly documented Plaintiff's complaints of severe back pain. *See* PAGEID 630-32, 1395-1401, 1568-71, 1574-77, 1606-08. In May 2009, Dr. Rivera assessed Plaintiff's ability to perform work-related activities. PAGEID 1623-24. She reported that Plaintiff had the following limitations: he can walk for thirty minutes or sit for sixty minutes at one time; he can lift no more than five pounds; and he can bend and stoop occasionally. *Id.* Dr. Rivera thus opined that Plaintiff could work zero hours a day. PAGEID 1623. As for psychiatric limitations, she opined that Plaintiff was moderately impaired in his ability to understand, remember, and carry out detailed instructions; moderately impaired in his ability to maintain attention and concentration; markedly impaired in his ability to work with others; moderately impaired in his ability to interact with the general public; extremely impaired in his ability to accept supervision; and markedly impaired in his ability to get along with co-workers. PAGEID 1624-25.

### 3. The ALJ's Decision

While the ALJ acknowledged Dr. Rivera's opinion, he determined it was inconsistent with other evidence in the record, and therefore "decline[d] to give either controlling or significant persuasive weight to Dr. Rivera's opinion." PAGEID 59. Instead, the ALJ accepted the opinions of consulting sources, who found that Plaintiff could perform a reduced range of light work. PAGEID 58-59.

First, the ALJ discredited Dr. Rivera's opinion -- that Plaintiff is unable to work due to his spinal injuries -- on the grounds that it was inconsistent with the assessment of William Padamadan, M.D., who examined Plaintiff at the Bureau of Disability Determination's ("BDD") request. PAGEID 59. Dr. Padamadan concluded that Plaintiff could work, but would need "physiological restrictions for frequent bending and stopping and picking heavy objects on a frequent basis, anywhere from 25 to 50 pounds." PAGEID 1355-58. Second, the ALJ refuted Dr. Rivera's opinion -- that Plaintiff was unable to work due to his cognitive impairments -- by finding it was inconsistent with that of psychologist Gordon Harris, Ph. D., who evaluated Plaintiff in November 2006 at the BDD's request. PAGEID 59, 1335-38. Dr. Harris opined that Plaintiff was "unimpaired" in all work-related mental abilities and had a GAF of 65.[5] PAGEID 1335-38.

Ultimately, in finding that Plaintiff has the RFC to perform a reduced range of light work, the ALJ did not defer to Dr. Rivera's disability finding. PAGED 59. Instead, the ALJ accepted the opinions of non-examining physicians, Dr. Das and Dr. Cruz, who opined that Plaintiff had the physical capacity to perform a reduced range of light work. *See* PAGEID 1469-74, 1375-82. Likewise, the ALJ accepted the opinion of non-examining psychologist, Alice Chambly, Psy. D., who concluded that Plaintiff had no functional mental limitations affecting his ability to work. *See* PAGEID 1340-53.

_____

[5]"GAF," Global Assessment of Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Comm'r of Soc. Sec.*, 61 F. App'x. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34. Individuals with scores of 61-70 are classified as having "some mild symptoms or some difficulty in social, occupational, or school functioning but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

### 4.      The ALJ's Error

The ALJ erred in not giving Dr. Rivera's opinion "controlling or significant persuasive weight" because he ignored the majority of the medical evidence in the record, which supports Dr. Rivera's opinion. The conflicting opinions of the state-reviewing doctors -- Dr. Padamadan and Dr. Harris -- do not amount to sufficient evidence to allow the ALJ to flatly reject Plaintiff's treating physician's opinion, particularly in light of the otherwise significant and consistent evidence in favor of Dr. Rivera's opinion.

Dr. Rivera's opinion was supported by ample objective medical evidence and clinical findings. The medical records show that Plaintiff received physical therapy at various times from 2002 through 2004. *See* PAGEID 280, 300-05, 319-21, 340-42, 390-98, 419-20, 474-76. During those visits, Plaintiff continuously complained of back pain. *See id.* Similarly, the records reveal that Plaintiff continually sought treatment for his chronic back pain and cognitive impairments from Dr. Ganti, his primary care physician before Dr. Rivera. PAGEID 273-74, 290-93, 295-96. 304-06, 313-14, 470-71. The records also contain Dr. Ganti's notes that Plaintiff has short-term memory loss due to the concussion he sustained in the motor vehicle accident. PAGEID 292, 296, 305, 314. In addition, the records show that Plaintiff went to urgent care and the emergency room on several occassions, seeking treatment for his back pain. PAGEID 293-94, 297, 472-73, 634-43. Moreover, X-rays and a CT scan of Plaintiff's spine from May 2005 show that his kyphoscoliotic deformity had progressed, his pedicle screws at the T9 and T10 level were laterally displaced, and there were advanced degenerative changes of the T11 vertebral body. PAGEID 682, 790. Thus, in June 2005, Plaintiff underwent a second surgery to repair the failed hardware in his back. PAGEID 689-95. After the surgery, the radiologist noted that there were still exaggerated degenerative changes at the

T11 and T12 levels. PAGEID 679-80. Further, Plaintiff reported that he continued to have back pain even after the second surgery. *See* PAGEID 630-34, 1365, 1372, 1568-72, 1574-77, 1629-31.

Additionally, Dr. Rivera's opinion is consistent with the record as a whole. The record contains numerous Compensation and Pension ("C&P") assessments -- evaluations completed at the V.A.'s request in response to Plaintiff's application for V.A. disability benefits -- supporting Dr. Rivera's opinion that Plaintiff is disabled unable to work.

### a.     R. L. Stegman, Ph.D.

In September 2002, Plaintiff was examined by neuropsychologist R.L. Stegman, Ph. D. PAGEID 306-10. Since the accident, Plaintiff reported, his capacity to learn had diminished, and he had difficulty recalling information and committing information to memory. *Id.* Dr. Stegman noted that Plaintiff exhibited "post concussive syndrome" and had "mild impairments in complex attentional processes and/or executive functions . . . consistent with the injuries he sustained in the motor vehicle accident." PAGEID 310. Dr. Stegman diagnosed Plaintiff with a cognitive disorder, not otherwise specified, and assigned him a GAF score of 51.[6] *Id.* Dr. Stegman also noted that Plaintiff's impairments were permanent and would not improve. *Id.*

### b.     Wylie Slagle, M.D.

Plaintiff was examined later the same month (September 2002) by Wylie Slagle, M.D. PAGEID 929-31. Dr. Slagle concluded that Plaintiff had a traumatic brain injury with cognitive and personality changes, and chronic pain due to a thoracic spine fracture with neurosurgical fixation.

---

[6]Individuals with scores of 51-60 are classified as having "moderate symptoms (*e.g.,* flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.,* few friends, conflicts with peers or co-workers)." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 33-34 (American Psychiatric Ass'n, 4th ed. text rev. 2000) (DSM-IV-TR).

PAGEID 930.  Further, Dr. Slagle noted that, based on Plaintiff's right pronator drift and some asymmetry on his EEG, it appeared  there was an injury to the left hemisphere of his brain. PAGEID 930-31.  Dr. Slagle's final comment was:  "The patient's main source of disability is due to cognitive side effects from his traumatic brain injury as well as chronic pain." PAGEID 931.

### c.     Richard Sanders, M.D.

In August 2004, psychiatrist Richard Sanders, M.D. evaluated Plaintiff for an "unemployability mental disease examination."  PAGEID 324-26.  Dr. Sanders recognized that Plaintiff was "clearly preoccupied with pain, and has great difficulty with most activities due to the pain."  PAGEID 325.  He also noted that Plaintiff was concerned with his poor short-term memory. *Id.*

Dr. Sanders concluded that Plaintiff's mental status examination "was highly consistent with depression."  PAGEID 326.  Dr. Sanders diagnosed Plaintiff with a "mood disorder due to [a] head injury with depressive features" and "cognitive disorder, not otherwise specified."  *Id.*  Further, Dr. Sanders assigned Plaintiff a GAF of 45.[7]  *Id.*  In addition, Dr. Sanders stated that Plaintiff's mood and cognitive problems prevented him from successfully seeking and retaining employment.  *Id.*

### d.     Jordan Brooks, M.D.

Jordan Brooks, M.D., a neurologist, also examined Plaintiff in August 2004.  PAGEID 322-24.  Plaintiff reported his problems with concentration, memory, attention, motivation, and organizational skills.  PAGEID 322.  Dr. Brooks diagnosed Plaintiff with a "history of a traumatic brain injury with significant neuropsychological deficits including lack of motivation, organization, and attention." PAGEID 323.

---

[7]A GAF of 45 describes a person with "serious symptoms ... or serious impairment in occupational, social, or school functioning."  DSM-IV-TR at 34.

### e.      William Gould, M.D.

That same month, Willaim Gould, M.D. conducted a general examination of Plaintiff. PAGEID 326-30.  Dr. Gould found a non-tender skull depression in Plaintiff's occipital area due to his closed head injury.  PAGEID 330.  Notably, Dr. Gould diagnosed Plaintiff with chronic back pain with multiple vertebral fractures and a Harrington rod placement.  *Id.*  Due to the injuries Plaintiff sustained in the motor vehicle accident, Dr. Gould opined, it was unlikely that Plaintiff was employable "in any capacity requiring any physical activity of lifting, prolonged sitting or standing." *Id.*

### f.      Joseph Rubino, M.D.

In September 2004, Plaintiff was examined by Joeph Rubino, M.D.  PAGEID 393-94.  Dr. Rubino noted Plaintiff's complaints of progressively worsening pain and stiffness. PAGEID 393. Upon reviewing the X-rays of Plaintiff's spine, Dr. Rubino determined that the hardware was well-positioned, though there appeared to be  some junctional scoliosis between his two fusions. *Id.*  Notably, Dr. Rubino concluded, "At this time I feel that [Plaintiff] is severely disabled from his injury and he is starting to show radiographic evidence of a worsening junctional scoliosis." *Id.*

### g.      Karl Siebuhr, M.D.

Four years later, Karl Siebuhr, M.D. examined Plaintiff's lumbar spine.  PAGEID 1562-68. Plaintiff reported pain and stiffness in his spine, rating his pain as a constant nine on a ten-point pain scale, but acknowledged that medication alleviated his pain.  PAGEID 1564.  Following his examination and a review of Plaintiff's X-rays, Dr. Siebuhr opined that Plaintiff "is unable to work due to multiple conditions including his brain condition secondary to a post head injury as well as his thoracolumbar spine condition."  PAGEID 1566.

### 5.      Treating Physician Factors

Even if Dr. Rivera's opinion was not entitled to controlling weight, the ALJ should have still applied the relevant factors in determining how much weight to accord to the medical source opinions. It is well-established that when a treating source's opinion is not accorded controlling weight, the ALJ must apply certain factors: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Bowen*, 478 F.3d at 747 (citing 20 C.F.R. § 404.1527(d)(2)). "[T]here remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitle to great deference." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (citation omitted).

Here, the ALJ merely listed these factors in rejecting Dr. Rivera's opinion, but did not apply them. The ALJ failed to acknowledge that Dr. Rivera had been Plaintiff's primary care physician for almost three years. *See* PAGEID 1623. During that time, Dr. Rivera repeatedly documented Plaintiff's complaints of low back pain. *See* PAGEID 630-32, 1395-1401, 1568-71, 1574-77, 1606-08. Moreover, the ALJ failed to consider that Dr. Rivera's opinion was consistent with the record as a whole, including objective medical evidence, such as X-rays and a CT scan, and the seven C&P assessments. A proper application of these relevant factors demonstrates that Dr. Rivera's medical opinion was entitled to full deference. Accordingly, the Court finds the ALJ's decision -- to not defer to the opinion of Plaintiff's treating physician -- unsupported by substantial evidence.

In conclusion, by ignoring substantial evidence in the record by Dr. Rivera and others, that Plaintiff was disabled, the ALJ erroneously determined that Dr. Rivera's opinion was inconsistent

with the record. Further, after careful review, the Court finds fault with Commissioner's arguments in support of the ALJ.[8] Accordingly, the ALJ's non-disability finding is unsupported by substantial evidence on the record as a whole.

### 6. Reversal is Warranted

Having concluded that the ALJ committed error in not giving controlling weight, or deferring, to the medical opinion of Plaintiff's treating physician, the Court finds that reversal of the ALJ's decision is warranted. In determining Plaintiff's RFC, the ALJ did not accept Dr. Rivera's assessment of Plaintiff's physical and mental limitations. For example, had the ALJ accepted Dr. Rivera's opinion that Plaintiff is unable to lift more than five pounds or stand for more than thirty minutes a time, PAGEID 1623, Plaintiff would have been precluded from performing light work, as that requires lifting up to twenty pounds and "a good deal of walking or standing." *See* 20 C.F.R. § 404.1567(b). Further, had the ALJ accepted Dr. Rivera's opinion that Plaintiff can sit for just sixty minutes, PAGEID 1623, Plaintiff would have likely been precluded from sedentary jobs as well. *See* 20 C.F.R. § 404.1567(b) (stating that generally a person who can do light work can also do sedentary work, "unless there are additional limiting factors such as . . . inability to sit for long

---

[8]Specifically, the Court rejects the Commissioner's argument that the Court is limited to reviewing the evidence from August 5, 2005 through December 31, 2006. To obtain DIB benefits, Plaintiff must prove that the "onset of disability" was prior to the expiration of his insured status and that disability lasted for a continuous period of twelve months. 42 U.S.C. § 423(d)(1)(A). In determining whether a Plaintiff is "disabled," the ALJ generally only considers evidence from the alleged disability onset date through the date last insured. *See King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 205-06 (6th Cir. 1990). However, evidence relating back to a claimant's prior condition, even though obtained after the date last insured, may be considered in an ALJ's disability determination. *See id.* Here, Dr. Rivera's assessment in 2009 establishes that Plaintiff's impairments have existed continuously and in the same degree during her treatment relationship with Plaintiff, which began in August 2006, before Plaintiff's date last insured expired. *See* PAGEID 1623-26. Further, despite the Commissioner's contrary assertions, the ALJ never suggested any of the evidence in the record was irrelevant.

periods of time"). Moreover, had the ALJ deferred to Dr. Rivera's opinion, that Plaintiff was "extremely impaired" in his ability to accept supervision, PAGEID 1625, the Vocational Expert acknowledged that Plaintiff could not maintain any employment. PAGEID 94.

In sum, the Court finds that the ALJ erroneously failed to give controlling weight to Dr. Rivera's opinion that Plaintiff is unable to work. Further, even if Dr. Rivera was not entitled to controlling weight, the ALJ erred in not deferring to Dr. Rivera's assessments of Plaintiff's physical and mental limitations in making Plaintiff's RFC finding. Had the ALJ properly accounted for these limitations, a finding of disabled would have been required. Therefore, the ALJ committed reversible error in finding that Plaintiff can perform a reduced range of light or sedentary work, without regard to Dr. Rivera's medical opinion.

### B.       The ALJ Erred in Failing to Consider the V.A.'s Disability Finding

Second, Plaintiff argues that the ALJ erred by ignoring the V.A.'s decision to grant him disability benefits. Specifically, in March 2005, the V.A. determined that Plaintiff's suffered from a "brain injury with cognitive and personality changes," which was 50 percent disabling. PAGEID 460-61. Further, the V.A. determined that Plaintiff was unable to work based on his service-connected disabilities and therefore granted him entitlement to the 100 percent rate. PAGEID 461.

While the decision of another governmental agency is not binding on the ALJ, 20 C.F.R. § 404.1504, the ALJ must consider such evidence. *See generally McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002) (citing to decisions from nine circuits holding that the ALJ must, at a minimum, consider other federal agencies' disability findings). The Sixth Circuit has likewise held that the V.A.'s disability determination is entitled to consideration. *See Stewart v. Heckler*, 730 F.2d

1065, 1068 (6th Cir. 1984). Social Security Ruling 06-03p explains that "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." SSR 06-03p, 2006 SSR LEXIS 5, at *17.[9]

Here, the only mention of Plaintiff's V.A. disability benefits in the ALJ's decision is one statement -- "He is currently receiving Veteran's Administration disability benefits" -- in the "Summary of Plaintiff's Testimony" section. PAGEID 54. The ALJ did not discuss further the V.A. finding. Nor did the ALJ indicate whether he was giving any weight to the V.A.'s disability finding. Although the ALJ was not bound by that finding, he was required to consider the V.A. finding and articulate one or more reasons for rejecting that finding. *See* SSR 06-03p, 2006 SSR LEXIS 5, at *17. Accordingly, the ALJ erred in failing to consider the V.A.'s decision to grant Plaintiff disability benefits. Therefore, the ALJ's non-disability finding merits reversal on this independent ground as well.

### C. Remand Is Warranted

When, as here, the nondisability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing, or reverse and order benefits granted. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

---

[9]Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b)(1).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Heath & Human Servs.*, 17 F.3d 171, 176 (6th Cir 1994). However, the Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir. 1985).

Such is the case here. As recounted herein, proof of disability is great and remand will serve no purpose other than delay. All substantial factual issues have been resolved and the record reflects that Plaintiff is disabled. In light of the medical evidence, proof of disability is overwhelming.

## IV. RECOMMENDATION

For the foregoing reasons, Plaintiff's two assignments of error are well taken. The Court finds that the ALJ's decision is unsupported by substantial evidence, and recommends that it be reversed. The Court also recommends that this case be remanded for an immediate award of DIB benefits as the record overwhelmingly establishes Plaintiff's entitlement to such benefits as of May 15, 2000, his alleged disability onset date, *i.e.*, the date of the motor vehicle accident.

**IT IS THEREFORE RECOMMENDED THAT:**

1.  The Commissioner's non-disability finding be found **UNSUPPORTED BY SUBSTANTIAL EVIDENCE**, and **REVERSED**; and

2.  This case be **REMANDED FOR AN AWARD OF IMMEDIATE DISABILITY INSURANCE BENEFITS WITH AN ONSET DATE OF MAY 15, 2000.**


December 8, 2011                                   s/ **Michael J. Newman**
                                                   United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).